ORIGINAL
FILED

FEB 21 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

MEJ

DONALD F. ZIMMER, JR. (State Bar No. 112279)
KRISTA L. COSNER (State Bar No. 213338)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendants
SMITHKLINE BEECHAM CORPORATION dba
GLAXOSMITHKLINE and McKESSON
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN PRUETT SR., as legal heir to
JODIE GERALDINE PRUETT, deceased,

Plaintiff,

v.

GLAXOSMITHKLINE, a Pennsylvania
corporation, and McKESSON,

Defendants.

Case No. CV 08 1057

DECLARATION OF KRISTA L.
COSNER IN SUPPORT OF NOTICE
OF REMOVAL AND REMOVAL,
UNDER 28 U.S.C. § 1441(b)
(DIVERSITY) and 28 U.S.C. § 1441(C)
(FEDERAL QUESTION) OF
DEFENDANT SMITHKLINE
BEECHAM CORPORATION dba
GLAXOSMITHKLINE

I, KRISTA L. COSNER, declare:

1.     I am an attorney admitted to practice before all courts of the State of

California and am an Associate with Drinker Biddle & Reath, LLP, attorneys for

SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE (incorrectly

sued as GLAXOSMITHKLINE, a Pennsylvania Corporation) ("GSK") and McKESSON

CORPORATION ("McKesson") (collectively, "Defendants") in this action. I make this

Declaration based on my personal knowledge, in support of Defendant GSK's removal of

*John Pruett, Sr., et al. v. GlaxoSmithKline, et al.*, San Francisco Superior Court Case

Number CGC-08-472061, to this Court. I would and could competently testify to the

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\3956271\1

DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL     CASE NO.

1  matters stated in this Declaration if called as a witness.

2    2.    A true and accurate copy of the Complaint in this action is attached as

3  **Exhibit A.**  There have been no additional proceedings in this state court action.

4    3.    Neither defendant has been served with the Complaint.

5    4.    A true and accurate copy of the Judicial Panel on Multidistrict Litigation's

6  ("JPML") Transfer Order, *In re Avandia Marketing, Sales Practices and Products*

7  *Liability Litigation,* MDL 1871 (E.D.P.A.) is attached as **Exhibit B.**

8    5.    The Declaration of Greg Yonko In Support of Defendant's SmithKline

9  Beecham's Notice of Removal and Removal Action Under 28 U.S.C. § 1441(B)

10  (Diversity) and 28 U.S.C. § 1441(c) (Federal Question) of Defendant SmithKline

11  Beecham Corporation dba GlaxoSmithKline in *Dorothy Bone et al. v. SmithKline*

12  *Beecham Corp., et al* is attached as **Exhibit C.**

13    6.    This is one of many cases that have been filed recently in both federal and

14  state courts across the country involving the prescription drug Avandia.

15    7.    Plaintiff's counsel, The Miller Firm, has filed Avandia cases in both state

16  and federal courts, but only in the cases filed in California has The Miller Firm named

17  McKesson or any distributor as a defendant.

18    8.    GSK intends to seek the transfer of this action to that Multidistrict

19  Litigation, *In re Avandia Marketing, Sales Practices and Products Liability Litigation,*

20  MDL 1871, and shortly will provide the JPML with notice of this action pursuant to the

21  procedure for "tag along" actions set forth in the rules of the JPML.

22    9.    GSK is, and was at the time plaintiff commenced this action, a corporation

23  organized under the laws of the Commonwealth of Pennsylvania with its principal place

24  of business in Philadelphia, Pennsylvania, and therefore is a citizen of Pennsylvania for

25  purposes of determining diversity.

26    10.    GSK was served with the Complaint on October 25, 2007.

27    11.    McKesson consents to this removal.

28  ///

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\395627\1

2

DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL    CASE NO.

1

2          I declare under penalty of perjury under the laws of the United States of America that

3   the foregoing is true and correct.  Executed on this 21 day of February, 2008 in San

4   Francisco, California.

5

6

7   KRISTA L. COSNER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\395627\1     DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL     CASE NO.

# EXHIBIT A

02/11/2008 11:03 FAX 2134( )54    GIRARDI & KEESE

SUMMONS ISSUED
**FILED**
San Francisco County Superior Court

FEB 1 1 2008

GORDON PARK-LI, Clerk
BY: *Olisa Butt* Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

JUL 1 1 2008 -9ᵒᵒ AM

DEPARTMENT 212

1 GIRARDI | KEESE
  1126 Wilshire Boulevard
2 Los Angeles, California 90017
  Telephone: (213) 977-0211
3 Facsimile: (213) 481-1554
  THOMAS V. GIRARDI – BAR NO. 36603
4 J. PAUL SIZEMORE – BAR NO. 254981
  Attorneys for Plaintiffs

5

6                    CALIFORNIA SUPERIOR COURT

7                       SAN FRANCISCO COUNTY

8 JOHN PRUETT SR., as legal heir to        Case No.: **CGC-08-472061**
9 JODIE GERALDINE PRUETT, deceased,
                                           CIVIL COMPLAINT
10          Plaintiff,
                                                -and-
11 vs.
                                           DEMAND FOR JURY TRIAL
12 GLAXOSMITHKLINE, a Pennsylvania
   corporation, MCKESSSON                           **FILED BY FAX**
13
          Defendant.
14

15        For the Complaint against the defendants, Plaintiff alleges:

16        1.    This action is for wrongful death and is a survival action brought on behalf of

17 the Plaintiff who is the heir and successor in interest of  ("Decedent"), who was prescribed

18 and supplied with, received, and who ingested and consumed the prescription drug Avandia®

19 (rosiglitazone) (hereinafter, "Avandia").

20        2.    Avandia was designed, manufactured, marketed, and distributed by Defendant

21 named herein for the management of type II diabetes mellitus, also known as non-insulin-

22 dependent diabetes mellitus (NIDDM) or adult-onset diabetes.

23                               **PARTIES**

24        3.    Plaintiff JOHN PRUETT SR. is the heir and successor in interest to his wife,

25 JODIE GERALDINE PRUETT. Plaintiff is a citizen of the State of Missouri.

26 ─────────────────────────────────────
                    PAGE 1
       COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

4.    JODIE GERALDINE PRUETT, deceased, was prescribed and ingested Avandia.

5.    Defendant GlaxoSmithKline (hereinafter, "GSK") is incorporated under the laws of the State of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania. GSK is the surviving entity from the following mergers: On May 7, 1995, GSK merged into Burroughs Wellcome Co. In connection with that merger, Burroughs Wellcome Co. changed its name to Glaxo Wellcome, Inc. On March 31, 2001, Glaxo Wellcome, Inc. merged with GSK. As the surviving entity, GSK is liable for the actions and inactions of all the companies involved in the mergers GSK is engaged in manufacturing, marketing, promoting, selling and/or distributing the drug Avandia and regularly conducts business within the State of California, and the County of San Francisco, and derives substantial revenues from goods consumed in Missouri and within this district.

6.    At all times herein mentioned, GSK did business in the State of California and knew that there transactions would subject them to suit in California.

7.    At all relevant times GSK, through its agents, servants, employees and apparent agents, was the designer, manufacturer, marketer, distributor and/or seller of Avandia. GSK sold and distributed Avandia throughout the world, including all 50 states in the United States and throughout California and Missouri.

8.    Defendant McKesson Corporation (hereafter, "McKesson") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, California. McKesson was and is authorized to do business in the State of California and was engaged in substantial commerce and business activity in each and every county where Plaintiff and decedent resided when decedent ingested Avandia, and upon information and belief, did distribute Avandia directly and/or

PAGE 2
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

02/11/2008 11:03 FAX 213461155    GIRARDI & KEESE    ☑006

1   indirectly to decedent.

2        9.    The true names or capacities, whether individual, corporate, or otherwise, of

3   Defendants Does 1-50, are unknown to Plaintiffs who therefore sue said Defendants by such

4   fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein

5   by fictitious names is in some manner legally responsible for the events and happenings

6   herein referred to and proximately caused foreseeable damages to Plaintiffs as alleged herein.

7        10.    At all times herein mentioned, "Defendants" include all named Defendants

8   herein as well as Defendants Does 1-50.

9        11.    At all relevant times Defendants, through their agents, servants, employees and

10   apparent agents, were the designers, manufacturers, marketers, distributors and/or sellers of

11   Avandia.

12        12.    Defendants, either directly or through their agents, apparent agents, servants or

13   employees, at all relevant times, sold and distributed Avandia in the State of California, and

14   every other state where decedent resided when she ingested Avandia.

15        13.    Defendants derive substantial revenue from pharmaceutical products used or

16   consumed in the State of California, and every other state where decedent resided when she

17   ingested Avandia.

18        14.    Defendants expected or should have expected, that their business activities

19   could or would have consequences within the State of California, and every other state where

20   decedent resided when she ingested Avandia.

21        15.    At all times pertinent, Defendant McKesson, did actively engage in the

22   distribution and marketing of Avandia, and as such, was privy to all the facts and research

23   known to GSK before Avandia was approved, and thereafter.

24

25

26 ─────────────────────────────────────────────

## FACTUAL BACKGROUND

16.     Avandia was first approved for use in the United States in 1999 for the treatment of type II diabetes mellitus.

17.     GSK marketed and sold Avandia (and its related medications Avandamet and Avandaryl) through the medical community to 6 million patients in the United States.

18.     Large numbers of medical providers and patients in California and throughout the United States have been and are being misled about Avandia's true efficacy and risks.

19.     GSK is a pharmaceutical manufacturer with neg income (adjusted earnings) in 2006 of approximately $10.6 billion.

20.     GSK has engaged in repeated and persistent fraud by misrepresenting, concealing and otherwise failing to disclose to physicians and patients, including Plaintiff and decedent, information in its control concerning the safety and effectiveness of Avandia.

21.     Avandia was initially approved by the United States Food and Drug Administration (hereinafter "FDA") as safe and effective for treating type 2 diabetes mellitus.

22.     Avandia would not have been initially approved and/or would not have been allowed to be sold with the label permitted by the FDA and/or would have been withdrawn from the market and/or would have carried a different and more stringent label, had the FDA been fully informed by Defendants of all the facts regarding the safety and efficacy of Avandia.

23.     There are three types of diabetes: 1) Type 1 diabetes; 2) Type 2 diabetes; and Gestational Diabetes. Type 1 and 2 are chronic, progressively worsening diseases associated with a variety of cardiovascular complications. Gestational diabetes generally occurs during pregnancy and women that develop gestational diabetes are more likely to develop Type 2

1 diabetes. Type 1 diabetes "results from the body's failure to produce insulin, the hormone
2 that 'unlocks' the cells of the body, allowing glucose to enter and fuel them. It is estimated
3 that 5-10% of Americans who are diagnosed with diabetes have type 1 diabetes[1]."

4     24.    The most common type of diabetes is type 2 diabetes. Type 2 diabetes occurs
5 where the body fails to properly use insulin (insulin resistance), combined with relative
6 insulin deficiency. Insulin, which is made in the pancreas, helps the body's cells use sugar
7 from your bloodstream, which comes from foods and drinks. Sugar is a source of energy for
8 cells[2]. The third type, gestational diabetes, affects about 4% of all pregnant women — about
9 135,000 cases in the United States each year[3].

10     25.    Most people with diabetes have health problems — or risk factors — such as high
11 blood pressure and cholesterol that increase the risk for heart disease and stroke. More than
12 65% of people with diabetes die from heart disease or stroke. With diabetes, heart attacks
13 occur earlier in life and often result in death. Other risks include, but not limited to,
14 blindness, kidney disease, nervous system diseases, amputation, sexual dysfunction, diabetic
15 ketoacidosis, and diabetic coma[4].

16     26.    Cardiovascular disease (CVD) is the main cause of death in these patients.
17 Thus, it is important that an antidiabetic agent reduce the risk of cardiovascular injury.

18     27.    During the past decade, numerous drugs have been introduced for the treatment
19 of type 2 diabetes that, used in monotherapy or in combination therapy, are supposed to better
20 control the disease in patients and reduce the health complications often associated with

21 ――――――――――――――
   [1] http://www.diabetes.org/about-diabetes.jsp
22
23    [2] Id.
24    [3] Id.
25    [4] Id.
26 ――――――――――――――――――――

1  diabetes, such as heart attacks, stroke and other cardiovascular complications.

2      28.    Avandia belongs to a class of drugs known as Thiazolidinediones (TZDs), a

3  novel class of insulin-sensitizing antidiabetic agents. In the USA and Canada, the two TZDs

4  are indicated for use in type 2 diabetes mellitus, rosiglitazone and pioglitazone.  A third,

5  troglitazone (Rezulin) has been removed from the market because of an association with

6  significant hepatotoxicity.

7      29.    The antidiabetic actions of TZDs are likely mediated by their interaction with

8  the nuclear receptor peroxisome proliferator-activated receptor-gam (PPARγ).

9      30.    PPARγ is a DNA-binding nuclear hormone receptor that has been shown to

10  regulate bone mass, energy expenditure and glucose metabolism.

11      31.    GSK has misrepresented information concerning the safety and efficacy of

12  Avandia for treating diabetes. For instance, GSK has allowed positive information about

13  Avandia to be disclosed, publicly, but has withheld and concealed negative information

14  concerning the safety and effectiveness of the drug as treatment for diabetic patients.  Thus,

15  GSK has prevented physicians and patients, including the Plaintiffs and the Plaintiffs'

16  physicians, from properly and independently exercising informed judgment.

17      32.    This decision to prescribe or ingest a drug is based on the balance between (a)

18  the benefit the patient is likely to derive from the treatment, including the harm or benefit, if

19  any, of providing no treatment or an alternative treatment and (b) the risk that the proposed

20  treatment will cause the patient harm and the nature and severity of the harm.

21      33.    In deciding whether to prescribe or to ingest a drug, physicians and patients

22  rely on their assessment of information received about the drug.  Such information must be

23  accurate and provide an unbiased picture of a drug's safety and efficacy in treating a

24  condition.  If the information is false or misleading, neither the patient nor the physician can

25  accurately assess the crucial risk/benefit balance or exercised independent judgment.

26

PAGE 6
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

34.    At all times material hereto, GSK, individually and/or collectively, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and/or otherwise caused the Avandia to be placed into the stream of commerce, and ultimately to be ingested by the decedent.

35.    Avandia has been widely advertised, marketed and represented by the Defendant as a safe and effective antidiabetic agent.

36.    The product warnings for Avandia in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with the Avandia.

37.    The Defendant marketed the Avandia heavily as safe and effective treatment for diabetes, promising fewer side effects than other similar treatments including the other TZDs on the market.

38.    The Defendant marketed Avandia as the most effective means of treating Type 2 diabetes mellitus, claiming to be more effective than older antidiabetics and other TZDs on the market.

39.    GSK's marketing efforts were designed and implemented to create the impression in physicians' and decedent's minds that Avandia is safe and effective for patients, and that it carried/carries less risk of side effects and adverse reactions than other available treatments.

40.    The marketing and promotion efforts of GSK, its advertisers and sales force served to overstate the benefits of the Avandia, and minimize and downplay the risks associated with the drug. These promotional efforts were made, while fraudulently withholding important safety information from the physicians, the FDA, and the public,

PAGE 7
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  specifically that GSK was aware of numerous reports of congestive heart failure, heart

2  attacks, strokes, and other serious cardiovascular injuries and death associated with the use of

3  Avandia, well beyond the background rate, and well beyond the rate for other antidiabetic

4  agents.

5      41.    Concealing or providing inaccurate or biased information that is material to a

6  prescribing decision misleads the physician and the patient.

7  ### GSK's Studies Concerning the Safety and

8  ### Efficacy of Avandia in Treating Type 2 Diabetes

9      42.    GSK boasts rosiglitazone as a safe and effective antidiabetic, claiming that

10  rosiglitazone is safer and more effective than older antidiabetic agents and other TZDs.

11      43.    GSK has overstated the efficacious value of rosiglitazone and has understated

12  the risks associated with rosiglitazone.

13  ### Efficacy

14      44.    GSK has promoted and marketed Avandia as being more effective than older

15  antidiabetic agents and other TZDs; however, there is no direct evidence that lowering

16  glucose or HbA1c levels with rosiglitazone reduces the risks of microvascular or

17  macrovascular disease or mortality in patients with type 2 diabetes. There is some evidence

18  that other oral hypoglycemics do succeed in doing so[5].

19      45.    Moreover, researchers recently concluded that older antidiabetic agents are as

20  effective or superior to rosiglitazone[6].

21

22  [5]UK Prospective Diabetes Study Group. Intensive blood-glucose control with sulphonylureas or insulin compared with conventional treatment and risk of complications in

23  patients with type 2 diabetes; UKPDS 33. The Lancet 1998; 352:837-853.

24  [6]*See* Bolen, et al. *Systematic Review: Comparative Effectiveness and Safety of Oral*

25  *Medications for Type 2 Diabetes Mellitus.* Annals of Internal Medicine. (Sept. 2007).

26

02/11/2008 11:04 FAX 2133811155        GIRARDI & KEESE                        ☾        ⓘ012

1    46.    There have been three meta-analysis conducted. Each meta-analysis has found

2    that Avandia increases the risk of cardiovascular-related injury.

3    47.    A meta-analysis combines the result of several studies that address a set of

4    related research hypotheses.

5    48.    The first analysis was performed by GSK and was handed over to the FDA in

6    August of 2006. The meta-analysis consisted of 42 separate double-blinded, randomized,

7    controlled clinical trials to assess the efficacy of rosiglitazone for treatment of type 2 diabetes

8    compared to either placebo or other antidiabetic therapies in patients with type 2 diabetes.

9    The combined studies included 8,604 patients on rosiglitazone and 5,633 patients randomized

10    to a variety of alternative therapeutic regiments, including placebo.

11    49.    GSK's own meta-analysis found an overall incidence of myocardial ischemia in

12    rosiglitazone-treated subjects. The risk equated to more than a 30 percent excess risk of

13    myocardial ischemic events in rosiglitazone-treated patients.

14    50.    A second meta-analysis conducted by Dr. Steven Nissen and Kathy Wolski

15    titled *Effect of Rosiglitazone on the Risk of Myocardial Infarction and Death from*

16    *Cardiovascular Causes* was published on May 21, 2007, in the New England Journal of

17    Medicine (NEJM).

18    51.    Nissen and Wolski reviewed data available to them through published

19    literature, the FDA website, and GSK's clinical-trials registry. The analysis included a

20    review of 42 clinical trials involving nearly 28,000 patients.

21    52.    Nissen and Wolski concluded that "[r]osiglitazone was associated with a

22    significant increased in the risk of myocardial infarction and with an increase in the risk of

23    death from cardiovascular causes that had borderline significance[7]."

24

    [7]Nissen SE and Wolski K., *Effects of Rosiglitazone on the Risk of Myocardial*

25    *Infarction and Death from Cardiovascular Causes*, N Engl J Med; 356, May 21, 2007.

26

53.    Patients suffering from Type 2 diabetes mellitus have a higher risk of experiencing a heart attack within seven years than non-diabetic patients. A diabetic taking Avandia has a much greater risk of suffering a heart attack or serious cardiovascular event— an estimate 43 percent increase or greater increase when compared with other diabetic drugs or placebos.

54.    On July 30, 2007, the FDA presented its results of the FDA meta-analysis. Similar to the GSK and Nissen/Wolski findings, the FDA likewise found an increased risk of heart attack, cardiovascular death, stroke and other serious ischemic related adverse events and ultimately recommended that a boxed warning be placed on the Avandia label.

55.    Thus, while GSK's rosiglitazone-containing drugs are marketed and sold by GSK as antidiabetic agents that reduce a diabetic patient's risk of heart attacks, studies conducted by GSK shows that rosiglitazone actually increases those risks by 43 percent according to the Nissen/Wolski meta-analysis and by 31 percent according to GSK's own meta-analysis.

### GSK Has Misled the Medical Community and the
### Public About the Efficacy and Safety of Avandia

56.    The product warnings for the Avandia in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with Avandia.   GSK has and continues to market Avandia as a safer and more effective antidiabetic agent than other antidiabetics on the market.   However, even prior to the approval of Avandia in the United States market, GSK knew or should have known of the significantly increased risks of heart attacks, cardiovascular-related deaths, strokes or other serious and life-threatening conditions, which it has concealed from the medical community

02/11/2008 11:04 FAX 213481155          GIRARDI & KEESE                    ☑014

1    and patients, including Plaintiff and decedent.

2          57.     In fact, in 1999, Dr. John Be. Buse (the current president-elect of the American

3    Diabetes Association), a diabetes expert and head of endocrinology at the University of North

4    Carolina, Chapel Hill, raised concerns about Avandia and heart problems.

5          58.     Instead of warning the public about this risk, GSK attempted to silence Dr.

6    Buse by threatening him with a $4 Million lawsuit and by characterizing him as a liar[8].

7          59.     In response to GSK's pressure, Dr. Buse sent a three-page letter to Dr.

8    Tadataka Yamada, GSK's Chairman of Research and Development. In the letter, Dr. Buse

9    wrote, "I may disagree with GSK's interpretation of that data . . . I am not for sale . . . Please

10   call off the dogs. I cannot remain civilized much longer under this kind of heat." Eventually,

11   Dr. Buse signed a clarifying statement with the company to help ease investor concerns.

12         60.     On March 15, 2000, John Buse, M.D., wrote a letter to the FDA again raising

13   concerns about a "worrisome trend in cardiovascular deaths and severe adverse events"

14   associated with Avandia:

15              I would like you to know exactly what my concerns are
                regarding rosiglitazone as a clinical scientist and my approach as
16              a clinician. On the basis of the increase in LDL concentration
                seen in the clinical trial program (whether the number we accept
17              as the truth is the 18.6% at 4 mg bid in the package insert or the
                "average of 12%" now being discussed) one would expect an
18              increase in cardiovascular events . . . . Based on studies with
                stains and plasmapharesis, changes in LDL concentration can be
19              associated with substantial changes in vascular reactivity and
                endothelial function over a time course of days to weeks[9].

20

21         61.     Around the same time period, March 7, 2000, Public Citizen filed a petition for

22

23   _____

24   [8] John Buse, M.D. Congressional Hearing Transcript (June 6, 2007).

25   [9] Letter from Dr. Buse to FDA (March 15, 2000) attached as Appendix B.

26   _____

1  immediate class labeling changes for all marketed TZDs[10]. In an independent investigation

2  of the TZDs, Public Citizen, after studying reviews by FDA Medical Officers, Statisticians,

3  and Pharmacologists, transcripts of FDA advisory committee meetings, and scientific

4  literature on trolitazone, rosiglitazone, and pioglitazone, argued that information associating

5  rosiglitazone to heart attacks and serious cardiovascular injuries "was never included in the

6  label, or seriously understated[11]."

7      62.    Public Citizen cited studies submitted to the FDA for approval that evidenced

8  lack of efficacy and increase in cardiovascular risks.

9      63.    Public Citizen argued that nowhere in the product insert was there any mention

10  of myocardial infarction even where it was found that "acute myocardial infarctions occurred

11  in 22 patients (0.5%) on rosiglitazone and was fatal in six, a result "higher than in other

12  treatment arms".

13      64.    In the monotherapy trial (#011), chest pain was reported in 0.0% (placebo

14  patients), 1.7% (patients on 2 mg bid rosiglitazone) and 3.3% (patients on 4 mg bid); five

15  patients on rosiglitazone had acute myocardial infarctions.[12]

16      65.    This is obviously a major concern since diabetics are already susceptible to an

17  increased risk of cardiovascular injury.

18      66.    Yet, even with this information available to it, GSK failed to warn consumers

19  and the medical community about the increased risk of heart attacks and other serious injuries

20

21      [10]Public Citizen's Petition to the FDA requesting that it immediately require labeling

22  for diabetes drugs troglitazone (Rezulin), rosiglitazone (Avandia) and pioglitazone (Actos)
    (HRG Publication #1514) (March 7, 2000).

23

24      [11]*Id.* at 1

25      [12]*Id.* at 6

26

1  associated with Avandia.

2        67.    Moreover, Defendant has repeatedly engaged in a pattern of conduct of

3  deliberately avoiding FDA recommendations as which warnings relating to public hazards

4  should be warned about.

5        68.    For instance, after the FDA required GSK to change its label on February 8,

6  2001 to reflect a risk of heart failure observed in patients on Avandia and insulin, GSK

7  defied FDA recommendations by engaging in false and misleading promotional activities.

8        69.    In a letter dated February 22, 2001, the FDA's Division of Drug Marketing,

9  Advertising and Communications (DDMAC) informed GSK that all promotional materials

10  for Avandia should be revised to prominently include the new risks, no later than March 8,

11  2001.

12        70.    GSK responded on March 1, 2001, wherein GSK committed to include the new

13  risk information by March 8, 2001.

14        71.    However, instead of complying with FDA requirements GSK's sales

15  representatives engaged in false or misleading promotional activities with respect to the new

16  risk information in Avandia's product labeling.

17        72.    In a Warning Letter dated July 17, 2001, the FDA warned GSK that they had

18  engaged in a continual violation of federal regulations in their promotional activities for the

19  marketing of Avandia.

20        73.    In that July 17, 2001 letter, the FDA warned that the DDMAC had been

21  monitoring its marketing of Avandia and had:

22            concluded that GSK has promoted Avandia in violation of the
              Federal Food, Drug, and Cosmetic Act (Act) and its
23            implementing regulations. See 21 U.S.C. §§ 331(a),(b), and
              352(a),(n).

24            Specifically, during the 10th Annual American Association of
              Clinical Endocrinologists (AACE) Meeting in San Antonio,

25

1      Texas, on May 2-6, 2001, representatives of GSK made oral
2      representations denying the existence of serious new risks
     associated with Avandia at GSK's promotional exhibit booth.
3      Additionally, GSK displayed Exhibit panels (AV013G) at the
     meeting that minimized these new risks associated with
4      Avandia.

5      Your promotional activities that minimize serious new risks are
     particularly troublesome because we have previously objected,
6      in two untitled letters, to your dissemination of promotional
     material for Avandia that failed to present any risk information
7      Avandia or minimized the hepatic risk associated with Avandia.
     Despite your assurances that such violative promotion of
8      Avandia had ceased, your violative promotion of Avandia has
     continued.[13]

9      74.    Following that May 21, 2007 NEJM publication of the Nissen/Wolski meta-

10  analysis, the FDA issued a safety alert for Avandia and advised patients who take it to

11  consult their doctors.

12      75.    On June 1, 2007, GSK published a "Dear Avandia Patient" letter, which

13  responded to the "recent press coverings about the safety of Avandia." Therein, GSK stated

14  that it "stands firmly behind Avandia" and that "Avandia is the most widely studied medicine

15  for type 2 diabetes" and that the evaluation of clinical trials by "well-informed experts and

16  researchers has been encouraging."

17      76.    At the congressional hearing on June 6, 2007, the FDA indicated that a black

18  

19      [13]Letter from Thomas Abrams, R.Ph., MBA, Director of the FDA's Division of Drug
    Marketing, Advertising and Communications to JP Garnier, Chief Executive Officer,
20  GlaxoSmithKline (July 17, 2001) (on file with the FDA).

21

22

23

24

25

26

1  box warning should be added to rosiglitazone (Avandia), for increased risk of heart failure.

2      77.    On July 30, 2007, the FDA held an FDA Advisory Committee Hearing on the

3  safety of Avandia. The panel was determining whether to recommend keeping the label the

4  same, adding a black box warning, or taking Avandia off the market altogether.

5      78..   Dr. David Graham, testifying on behalf of the FDA, called for withdrawing

6  Avandia and estimated that its toxic effects on the heart had caused up to 205,000 heart

7  attacks and strokes, some fatal, from 1999 to 2006. For every month that Avandia is sold,

8  Dr. Graham said, 1,600 to 2,200 patients will suffer more of those problems.

9      79.    The FDA provided testimony that Avandia offers no unique benefits compared

10  to other drugs in battling diabetes, but that all indications point to increased risks of heart

11  attack and sudden death.

12      80.    The panel of advisers to the FDA voted 20-to-3 that Avandia increases the risks

13  of heart attacks.

14      81.    Defendants, through their affirmative misrepresentations and omissions,

15  actively concealed from Plaintiffs and their physicians the true and significant risks

16  associated with taking Avandia™. The running of any applicable Statute of Limitations has

17  been tolled by reason of Defendants' fraudulent concealment.

18      82.    As a result of Defendants' actions, decedent and prescribing physicians were

19  unaware, and could not have reasonably known or have learned through reasonable diligence,

20  that decedent had been exposed to the risk identified in this complaint, and that those risks

21  were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

22      83.    Defendants' actions amounted to over promotion.

23      84.    Defendants' actions do not meet the criteria necessary to overcome the

24  "Reasonable Expectations Doctrine", thus they may not rely upon the "Learned Intermediary

25

26 ────────────────────────────────────────
                        PAGE 15.
          COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL.

1  Doctrine" to escape liability.

2

3  ## FIRST CAUSE OF ACTION

4  ### ( Unfair and Deceptive Business Practices)

5      85.    Plaintiff restates the allegations set forth above as if fully rewritten herein.

6      86.    Defendants were engaged in the business of manufacturing, creating,

7  designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising

8  and otherwise distributing Avandia in interstate commerce, throughout the world and in the

9  states where decedent resided.

10      87.    Decedent was using Avandia in the manner for which it was intended or in a

11  reasonably foreseeable manner.

12      88.    Avandia was expected to and did reach decedent without substantial change in

13  their condition as manufactured, created, designed, tested, labeled, sterilized, packaged,

14  supplied, marketed, sold, advertised and otherwise distributed.

15      89.    Decedent was not aware of, and reasonably could not have discovered, the

16  actual dangerous nature of Avandia.

17      90.    Avandia cause increased risks of heart disease, and therefore constitute

18  products unreasonably dangerous for normal use due to their defective design, defective

19  manufacture, and the Defendants' misrepresentations and inadequate facts disclosed to the

20  decedent including, *inter alia*, the actual risk of developing heart disease and the permanent,

21  irreversible harm associated with the disease.

22      91.    As a direct and proximate result of Defendants' manufacturing, creating,

23  designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising

24  and otherwise distributing Avandia in interstate commerce, decedent suffered a premature

25

26

02/11/2008 11:05 FAX 21348115    GIRARDI & KEESE    ☒020

1   death and Plaintiff was injured and is entitled to recover compensatory damages in amounts

2   to be proven at trial.

3       92.   The Defendants therefore are strictly liable to the Plaintiff and Plaintiff is

4   entitled to compensatory damages. Additionally, Defendants' conduct was so outrageous as

5   to constitute ill will, bad motive and reckless indifference to the interests of the consumers.

6   Plaintiff therefore is entitled to punitive damages in an amount to be proven at trial.

7                       **SECOND CAUSE OF ACTION**

8                      (Negligence – Negligent Manufacture)

9       93.   Plaintiff restates the allegations set forth above as if fully rewritten herein.

10      94.   It was the duty of Defendants to use reasonable care in the manufacturing,

11  creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling,

12  advertising and otherwise distributing of Avandia.

13      95.   Contrary to their duty, Defendants failed:

14          (a) to adequately and properly test and inspect Avandia so as to ascertain

15  whether or not they were safe and proper for the purpose for which they were designed,

16  manufactured and sold;

17          (b) to adequately and properly conduct a dosing study or otherwise to test

18  Avandia to ascertain the minimum effective dosages and to use this information to instruct

19  the users of the drug of the proper dosage so as to minimize the risk of development of heart

20  disease or other side effects;

21          (c) to utilize and/or implement a reasonably safe design in the manufacture of

22  Avandia;

23          (d) to manufacture Avandia in a reasonably safe condition appropriate for the

24  use for which they were intended; and

25

26

1          (c) to adequately and properly test Avandia to ascertain the the risk of other

2    side effects.

3          96.    Defendants manufactured and sold Avandia, which as constituted are and were

4    a hazard to decedent's health. Defendants' manufacture and sale of Avandia as constituted

5    caused decedent to suffer adverse side effects and premature death.

6          97.    Defendant was otherwise careless and negligent.

7          98.    As a direct and proximate result of Defendants' negligent, reckless and careless

8    manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying,

9    marketing, selling, advertising and otherwise distributing Avandia in interstate commerce,

10    decedent was caused to suffer a premature death.

11          99.    As the proximate cause and result of Defendants' failures as stated above,

12    Plaintiff was injured and is entitled to recover compensatory and punitive damages in

13    amounts to be proven at trial.

14                        THIRD CAUSE OF ACTION

15                        (Negligence - Failure to Warn)

16          100.    Plaintiff restates the allegations set forth above as if fully rewritten herein.

17          101.    It was Defendants duty to use reasonable care in the labeling, marketing,

18    selling, advertising, and promoting of Avandia, and to warn decedent and her medical

19    providers of the true risk of and other side effects when using Defendants' drugs.

20          102.    Contrary to their duty, Defendants failed:

21          (a) to adequately and properly warn decedent of the risks of serious

22    complications and bodily harm when Avandia are used in the manner for which they were

23    intended;

24          (b) to adequately and properly warn decedent of the risks of diseases when

25

26

02/11/2008 11:05 FAX 2134811155    GIRARDI & KEESE    @022

1    Avandia are used in a manner for which they were intended;

2        (c) to adequately and properly label Avandia so as to warn the decedent of the

3    risks of complications and disease;

4        (d) to adequately and properly label Avandia so as to warn the decedent of the

5    risks of heart problems; and

6        (e) to inform decedent and her medical providers of the risks of Avandia, so as

7    to reduce the risk of other side effects.

8        103.    Further, Defendants failed to meet the standard of care set by the Federal Food,

9    Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal

10   regulations provided there under, the Sherman Food, Drug and Cosmetic Law, and other

11   applicable laws, statutes and regulations. Defendant further failed in the following respects:

12       (a) The labeling lacked adequate information on the use of the drugs Avandia

13   (21 C.F.R. § 201.56(a) and (d));

14       (b) The labeling failed to provide adequate warnings of severe and disabling

15   medical conditions including, without limitation, congestive heart failure, myocardial

16   infarction, stroke, increased risk of fractures in women, macular edema, and other adverse

17   medical conditions, as soon as there was reasonable evidence of their association with the

18   drugs (21 C.F.R. 201.57(e));

19       (c) There was inadequate information for patients for the safe and effective use

20   of Defendants' drugs (21 C.R.F. 201.57(f)(2));

21       (d) There was inadequate information regarding special care to be exercised by

22   the decedent's doctors for safe and effective use of Defendants' drugs (21 C.F.R.

23   201.57(f)(1));

24       (e) The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

25

26

1      (f) Defendants' acts constitute and adulteration and/or misbranding as defined

2  by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

3      104.  Defendants' product Avandia were unaccompanied by proper and adequate

4  warnings regarding the risks associated with the use of Defendants' products and the scope,

5  severity and duration of such injuries.

6      105.  Despite Defendants' failure to provide adequate warnings to protect users or

7  consumes of Avandia, Defendants nevertheless continued to aggressively market, promote,

8  distribute and sell the dangerously defective products.

9      106.  As a result of Defendants' negligence and the violations of the statutes and

10  regulations listed above, decedent suffered injures and premature death as alleged herein.

11      107.  As a direct and proximate result of Defendants' failure to warn, Plaintiff was

12  injured and is entitled to recover compensatory and punitive damages in amounts to be

13  proven at trial.

14          <u>**FOURTH CAUSE OF ACTION**</u>

15          **(Breach of Express Warranty)**

16      108.  Plaintiff restates the allegations set forth above as it fully rewritten herein.

17      109.  Defendants expressly warranted, by and through statements made by

18  Defendants or their authorized agents, that Avandia were safe, effective, fit and proper for

19  their intended use.

20      110.  Decedent, and her agents, relied on the skill, judgment and representations of

21  Defendants.

22      111.  Avandia did not conform to Defendants' express warranties in that they were

23  not safe and fit for their intended use because it caused serious adverse side effects as set

24  forth above.

25

26 ─────────────────────────────────────────────

112. As the proximate cause and result of Defendants' breach of their express warranties, Plaintiff was injured and is entitled to recover compensatory and punitive damages in amounts to be proven at trial.

### FIFTH CAUSE OF ACTION

### (Breach of Implied Warranty)

113. Plaintiff restates the allegations set forth above as it fully rewritten herein.

114. Defendants impliedly warranted to decedent, and her agents, that Avandia was of merchantable quality and safe and fit for their intended use.

115. Decedent, and her agents, relied on Defendants' skill and judgment.

116. Avandia was not of merchantable quality or safe and fit for their intended use in that they had dangerous propensities when used as intended to cause severe injuries as set forth above.

117. As the proximate cause and result of Defendants' breach of its implied warranties, Plaintiff was injured and is entitled to recover compensatory and punitive damages in amounts to be proven at trial.

### SIXTH CLAIM FOR RELIEF

### (Violations of California Business Code Provisions)

118. Plaintiff restates the allegations set forth above as if fully rewritten herein.

119. California Business & Professions Code Section 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

120. California Business & Professions Code section 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use

1  of untrue or misleading statements.

2        121.   The acts and practices described herein were and are likely to mislead the

3  general public and/or to induce by false advertising, and therefore constitute unfair business

4  practices within the meaning of Business & Professions Code Section 17200 and/or 17500.

5        122.   The acts and untrue and misleading advertising set forth in presiding

6  paragraphs are incorporated by reference and are, by definition, violations of Business &

7  Professions Code Section 17200 and 17500, includes, but is not limited to:

8        a.     Representing to decedent, decedent's physicians and the general public

9  that Avandia was safe, fit and effective for human consumption, knowing that said

10  representations were false, and concealing from the decedent, decedent's physicians and the

11  general public that Avandia has a serious propensity to cause injuries to users;

12        b.     Engaging in advertising programs designed to create the image,

13  impression and belief by consumers, physicians and others that the use of Avandia was safe

14  for human use, had fewer side effects and adverse reactions than other methods for diabetes

15  control, constituted a convenient, safe form for treating diabetes and would not interfere with

16  daily life, even though the Defendants knew these to be false, and even though the

17  Defendants had no reasonable grounds to believe them to be true;

18        c.     Purposely downplaying and understating the health hazards and risks

19  associated with Avandia; and

20        d.     Issuing promotional literature deceiving potential users of Avandia by

21  relaying positive information and manipulating statistics to suggest widespread acceptability,

22  while downplaying the known adverse and serious health effects and concealing material

23  relevant information regarding the safety of Avandia.

24

25

26

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

    a.   For general and special damages in an amount to be determined at trial;

    b.   For prejudgment and post-judgment interest on the above general and special damages;

    c.   For punitive damages in a amount sufficient to punish Defendants and deter such conduct in the future.

    d.   For costs and attorneys' fees; and

    e.   For all other relief that Plaintiff may be entitled to at equity or at law, including but not limited to the funding of a medical monitoring program.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable in this action.

Dated: February 7, 2008

Respectfully submitted,

GIRARDI | KEESE

By

J. PAUL SIZEMORE
Attorneys for Plaintiff

From: JANNEY & JANNEY COURT SERVICES   213 413 8024           02/11/2008 12:59    #797 P.003/003

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GLAXOSMITHKLINE, a Pennsylvania corporation, MCKESSON

| FOR COURT USE ONLY |
|---|
| (SOLO PARA USO DE LA CORTE) |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN PRUETT SR., as legal heir to JODIE GERALDINE
PRUETT, deceased,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es): | (Número del Caso): CGC-08-472061 |

Superior Court California/County San Francisco
400 McAllister Street, Room 103
San Francisco, California 94102-4514

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Girardi Keese                    (213) 977.0211    (213) 481.1554
1126 Wilshire Boulevard
Los Angeles, California   90017          Gordon Park-Li

| DATE: | Clerk, by | | Deputy |
|---|---|---|---|
| (Fecha) FEB 11 2008 | (Secretario) ELIAS BUTT | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL: SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

| | | Page 1 of 1 |
|---|---|---|
| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
| Judicial Council of California | Legal Solutions LA #119 | |
| SUM-100 [Rev. January 1, 2004] | | |

[001/003]                              GIRARDI & KEESE         ▶▶▶▶1551848121 XAF 65:21 8002/11/20

From: JANNEY & JANNEY COURT SERVICES    213 413 8024          02/11/2008 12:59    #797 P.002/003

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
THOMAS V. GIRARDI, Bar no. 36603
J. PAUL SIZEMORE, Bar No. 254981
Girardi Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
    TELEPHONE NO: (213) 977.0211.    FAX NO: (213) 481.1554
ATTORNEY FOR *(Name)*: Plaintiffs Pruett, etc., et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
    STREET ADDRESS: 400 McAllister Street, Room 103
    MAILING ADDRESS: San Francisco, California  94102-4514
    CITY AND ZIP CODE:
    BRANCH NAME:

FOR COURT USE ONLY

F I L E D
San Francisco County Superior Court

FEB 11 2008

GORDON PARK-LI, Clerk
BY: _____
                    Deputy Clerk

CASE NAME:  JOHN PRUETT SR., ETC., ET AL.
VS.    GLAXOSMITHKLINE, ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-08-472061 |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[X] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
    b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify)*: SIX
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

**FILED BY FAX**

Date: February 11, 2008
J. PAUL SIZEMORE
        *(TYPE OR PRINT NAME)*                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1 2007]

**CIVIL CASE COVER SHEET**
Legal
Solutions
◆ Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

# EXHIBIT B

10/18/2007 16:21 FAX 2025021          JPML                                                    ☑002

# MDL 1871

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

7:23 am, Oct 16, 2007

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE: AVANDIA MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

Sharon Ann Dabon v. GlaxoSmithKline, Inc.,  )
   E.D. Louisiana, C.A. No. 2:07-3041  )      MDL No. 1871
Celenio Cruz-Santana v. GlaxoSmithKline, PLC, et al.,  )
   D. Puerto Rico, C.A. No. 3:07-1461  )

## TRANSFER ORDER

    Before the entire Panel[*]: Plaintiff in the action pending in the Eastern District of Louisiana, has moved, pursuant to 28 U.S.C. § 1407, to centralize this litigation in the District of Puerto Rico or, alternatively, in the Eastern District of Louisiana. This litigation currently consists of moving plaintiff's action and one action pending in the District of Puerto Rico.[1] Plaintiff in the latter action supports centralization in the District of Puerto Rico. Plaintiffs in potential tag-along actions pending in the Central District of California, the Southern District of Florida, the District of New Jersey, the Southern District of New York, and the District of Puerto Rico have submitted responses in support of centralization. These plaintiffs suggest a variety of fora for transferee district, including the Southern District of Florida (favored by plaintiffs in the action pending in that district), the District of New Jersey (favored by plaintiff in the action pending in that district, as well as plaintiff in the Central District of California action), the Southern District of New York (favored by plaintiffs in eight actions pending in that district), and the District of Puerto Rico (favored by plaintiffs in the action pending in that district). Responding defendant SmithKlineBeecham Corp. d/b/a GlaxoSmithKline (GSK) initially opposed the Section 1407 motion, but now supports centralization in the Eastern District of Pennsylvania.

---

[*]   Judge Heyburn took no part in the disposition of this matter.

[1]   The Panel has been notified of 28 additional related actions pending in the Western District of Arkansas, the Central District of California (two actions), the Southern District of Florida (two actions), the Southern District of Illinois, the Southern District of Indiana, the Eastern District of Louisiana, the District of New Jersey, the Eastern District of New York, the Southern District of New York (ten actions), the Northern District of Ohio, the Eastern District of Oklahoma, the Eastern District of Pennsylvania, the District of Puerto Rico, the Eastern District of Tennessee, the Western District of Tennessee, and the Eastern District of Texas (two actions). These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

## OFFICIAL FILE COPY

IMAGED OCT 1 6 2007

PLEADING NO. 22

- 2 -

On the basis of the papers filed and hearing session held, we find that these actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Both actions arise from allegations that certain diabetes drugs manufactured by GSK -- Avandia and/or two sister drugs containing Avandia (Avandamet and Avandaryl) -- cause an increased risk of heart attack and other physical injury, and that GSK failed to provide adequate warnings concerning that risk. Centralization under Section 1407 will eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

We are also persuaded that the Eastern District of Pennsylvania is an appropriate transferee district for pretrial proceedings in this litigation. GSK's principal place of business is located in that district, and thus many witnesses and documents relevant to the litigation are likely to be found there. In addition, one of the potential tag-along actions was commenced in the Eastern District of Pennsylvania.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Cynthia M. Rufe for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

D. Lowell Jensen
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman* | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

# EXHIBIT C

1  DONALD F. ZIMMER, JR. (State Bar No. 112279)
2  KRISTA L. COSNER (State Bar No. 213338)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105
   Telephone: (415) 591-7500
4  Facsimile: (415) 591-7510

5  Attorneys for Defendants
   SMITHKLINE BEECHAM CORPORATION dba
6  GLAXOSMITHKLINE and McKESSON
   CORPORATION

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  DOROTHY BONE; DAVID COOK;              Case No.
    JESUS COTA; JO ELLEN GARNER;
13  BARRON GATTA; CATHY GRAY;              DECLARATION OF GREG YONKO IN
    FRANKLIN JENKINS; GREGORY              SUPPORT OF NOTICE OF REMOVAL
14  RODRIGUEZ; ROBERT RODRIGUEZ;           AND REMOVAL ACTION, UNDER 28
    ROGER TAVARES; LAVIOLA                 U.S.C. § 1441(B) (DIVERSITY) and 28
15  TOWNSEND,                              U.S.C. § 1441(C) (FEDERAL
                                           QUESTION) OF DEFENDANT
16                 Plaintiffs,             SMITHKLINE BEECHAM
                                           CORPORATION dba
17        v.                               GLAXOSMITHKLINE

18  SMITHKLINE BEECHAM
    CORPORATION dba
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,
20
                   Defendants.
21

22        I, GREG YONKO, declare:

23        1.      I am Senior Vice President – Purchasing for McKesson Corporation

24  ("McKesson"), and make this declaration in support of the Notice of Removal and

25  Removal Action of defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline

26  ("GSK") based on my personal knowledge.

27        2.      I have been in my current position since 1997, and have been employed by

28  McKesson for over 25 years.  As Vice President of Purchasing, I am responsible for

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\391730\1     DECLARATION OF GREG YONKO IN SUPPORT OF REMOVAL          CASE NO.

1   purchasing prescription and non-prescription branded product management and

2   investment purchasing.

3        3.    McKesson was and is a Delaware corporation, with its principal place of

4   business in San Francisco, California.

5        4.    McKesson was served with the Summons and Complaint in this action on

6   October 24, 2007.

7        5.    McKesson consents to the removal of this action.

8        6.    McKesson is a wholesale distributor of pharmaceuticals, over-the-counter

9   and health and beauty products to chains, independent pharmacy customers and hospitals.

10   As a wholesale distributor, McKesson distributes products manufactured by others. As to

11   Avandia®, McKesson does not manufacture, produce, process, test, encapsulate, label, or

12   package, these products, nor does it make any representations or warranties as to the

13   product's safety or efficacy.

14        7.    McKesson distributed Avandia®, manufactured by GSK, along with many

15   other products of other pharmaceutical companies, to certain drug stores, pharmacies,

16   health care facilities and hospitals throughout the United States. As stated above,

17   McKesson did not manufacture, produce, process, test, encapsulate, label, or package

18   Avandia®, but only delivered the unopened boxes that contained the drug.

19        8.    McKesson is one of many suppliers who could have supplied Avandia® to

20   the numerous pharmacies throughout the United States.

21       I declare under penalty of perjury under the laws of the State of California that the

22   foregoing is true and correct, and this declaration was executed on November 16, 2007 in

23   San Francisco, California.

24

25                  GREG YONKO

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105